IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LINDSEY BARRETT, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| CITY OF FOREST PARK, GEORGIA; FOREST PARK POLICE DEPARTMENT; CAPTAIN WILLIS SKELTON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; AND CHIEF BRANDON CRISS, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, | |
| Defendants. | |

## COMPLAINT

COMES NOW, Lindsey Barrett ("Plaintiff" or "Ms. Barrett"), by and through her undersigned counsel, and files this, her Complaint, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages and reasonable attorney fees against Defendants City of Forest Park, Georgia; Forest Park Police Department; Captain

1

Willis Skelton; and Chief Brandon Criss (collectively "Defendants") for violations of her rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment.

2.

This action challenges Defendants' discriminatory conduct in subjecting Plaintiff to sex-based harassment and retaliating against her for opposing such unlawful conduct by suspending and terminating her employment.

**JURISDICTION AND VENUE**

3.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, et seq., and 42 U.S.C. § 1983, seeking damages and equitable relief under Acts of Congress providing for the protection of civil rights.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein occurred within this judicial district in Forest Park, Clayton County, Georgia.

## ADMINISTRATIVE PROCEDURES AND EXHAUSTION

5.

Plaintiff is in the process of fulfilling conditions precedent necessary to proceed with her Title VII claims. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 14, 2024, Charge Number 410-2024-07412. The charge was dual-filed with the Georgia state fair employment agency. The matter is still under investigation by the EEOC and Plaintiff is filing a Motion to Stay pending the completion of that investigation and filing this action to preserve non-Title VII claims.

6.

Plaintiff's claims under 42 U.S.C. § 1983 for violations of the Equal Protection Clause do not require administrative exhaustion. *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982)

## PARTIES

7.

Plaintiff Lindsey Barrett is a female resident of Georgia. At all relevant times, Plaintiff was employed by Defendants as a Communications Operator from June 1, 2022, until May 14, 2024.

8.

Defendant City of Forest Park, Georgia, and Defendant Forest Park Police Department (collectively "the City") are municipal entities and political subdivisions of the State of Georgia located in Clayton County. At all times relevant to this action, the City has employed fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current and/or preceding calendar year and has continuously been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(b). The City is a public entity, a municipality, and is a "person" under 42 U.S.C. Section 1983, and exists in that capacity within this Judicial District and Division.

9.

Defendant City of Forest Park, Georgia, and Defendant Forest Park Police Department may be served with process by delivering a copy of the summons and complaint to Latosha Clemons, Interim City Manager at 745 Forest Parkway, Forest Park, GA 30297.

10.

Defendant Willis Skelton is sued in both his individual and official capacities. At all times relevant to this action, Defendant Skelton served as Captain of the Support Services Division of the Forest Park Police Department, with supervisory

authority over the Communications Team and Plaintiff's employment. Defendant Skelton possessed and exercised authority to make personnel decisions affecting Plaintiff, conducted investigations of Plaintiff, and engaged in conduct that violated Plaintiff's constitutional rights to equal protection under the Fourteenth Amendment.

11.

Defendant Willis Skelton may be served with process by delivering a copy of the summons and complaint to him at the Forest Park Police Department, 320 Cash Memorial Boulevard, Forest Park, GA 30297.

12.

Defendant Brandon Criss is sued in both his individual and official capacities. At all times relevant to this action, Defendant Criss served as Chief of Police of the Forest Park Police Department with final decision-making authority over Plaintiff's employment.

13.

As Chief of Police, Defendant Criss promulgated, adopted, and interpreted policies – Standard Operating Procedures – affecting employees and under which Defendant contends it took the actions at issue here. As such, he is a final policy making official for the City of Forest Park for purpose of 42 U.S.C. Section 1983.

14.

Defendant Brandon Criss may be served with process by delivering a copy of the summons and complaint to him at the Forest Park Police Department, 320 Cash Memorial Boulevard, Forest Park, GA 30297.

**FACTUAL ALLEGATIONS**

15.

Plaintiff began her employment with Defendant City of Forest Park, Georgia, as a Communications Operator at the Forest Park Police Department on June 1, 2022.

16.

As a Communications Operator, Plaintiff was responsible for operating and monitoring communications equipment, multi-line telephones, and other communication systems in the Communications Room, including handling emergency 911 calls and non-emergency calls, dispatching appropriate emergency personnel to incident locations, and maintaining communications with officers and emergency units in the field.

17.

Plaintiff worked 12-hour shifts in the Communications Room alongside her senior supervisor, Keith Johnston, and other communications operators.

18.

Captain Willis Skelton was promoted to Captain overseeing the Support Services Division, which included supervision of the Communications Team, effective August 22, 2023.

19.

Beginning in approximately June 2023, Captain Skelton began coming into the Communications Room and engaging in inappropriate and unwelcome conduct toward Plaintiff.

20.

Captain Skelton would stand uncomfortably close to Plaintiff's workstation, invading her personal space while she was attempting to perform her job duties.

21.

Captain Skelton would put his hands on Plaintiff's shoulders without her consent or invitation.

22.

Captain Skelton would bend down and put his lips so close to Plaintiff's ear that she could feel his breath on her neck and ear.

23.

On multiple occasions, Captain Skelton sat in a chair in the Communications Room, crossed his legs, stare directly at Plaintiff, and make moaning noises while watching her work.

24.

This conduct occurred on almost every shift that Plaintiff worked over a period of approximately eight to twelve months, from June 2023 through May 2024.

25.

Plaintiff repeatedly told Captain Skelton that she was uncomfortable with his behavior and asked him to respect her personal space.

26.

Despite Plaintiff's clear objections, Captain Skelton would grin and walk away, only to repeat the same conduct again on subsequent shifts.

27.

On March 4, 2024, while Plaintiff was in the middle of taking a call, Captain Skelton came into the Communications Room, placed his hand on Plaintiff's shoulders, and bent down with his lips touching Plaintiff's ear, asking her what she was doing.

28.

After Plaintiff completed the call, she turned around and again asked Captain Skelton to respect her personal space.

29.

Plaintiff's senior supervisor, Keith Johnston, was present in the Communications Room during many of these incidents and witnessed Captain Skelton's conduct, including the staring, close proximity, and inappropriate behavior toward Plaintiff.

30.

The frequency and severity of Captain Skelton's unwelcome conduct made Plaintiff feel extremely uncomfortable in her workplace and interfered with her ability to perform her job duties effectively.

31.

Captain Skelton's conduct was, in totality, severe or pervasive, creating a hostile and intimidating work environment that adversely altered the terms and conditions of Plaintiff's employment, because of her sex.

32.

Plaintiff's workplace became a sexually hostile environment whenever Captain Skelton entered the Communications Room.

33.

As a result of Captain Skelton's ongoing harassment, Plaintiff began to dread coming to work and required daily "prep talks" with herself to cope with the sexually hostile work environment.

34.

On or about March 4, 2024, following another incident in which Captain Skelton invaded her personal space, Plaintiff loudly confronted Captain Skelton and told him to respect her personal space.

35.

On March 4, 2024, the same day Plaintiff confronted Captain Skelton about invading her personal space, Defendants placed Plaintiff on immediate administrative suspension with pay, sending her home for the remainder of her shift.

36.

Captain Skelton made retaliatory statements to Plaintiff, including telling her on March 4, 2024, "You better keep in mind that I can replace you at any time."

37.

On March 4, 2024, after Captain Skelton suspended Plaintiff for her confrontation with him, Plaintiff met with Chief Brandon Criss and Major Charles Jones in Chief Criss's office. Plaintiff requested that Captain Skelton leave the room

because she felt uncomfortable. Plaintiff then verbally reported to Chief Criss and Major Jones that she was extremely uncomfortable with Captain Skelton's conduct, specifically describing how he would stand uncomfortably close to her and make weird noises. Chief Criss stated that he would have the matter investigated.

38.

On March 5, 2024, Plaintiff followed up with Internal Affairs Officer Wysinger to inquire about the status of any investigation. Officer Wysinger was unaware of Plaintiff's complaint and asked Plaintiff to come to his office to provide more information. Plaintiff verbally explained Captain Skelton's harassment to Officer Wysinger, including the staring, standing uncomfortably close, and incidents at the department gala. Officer Wysinger stated he would have to speak with his captain because he was unsure how to handle the situation.

39.

On March 8, 2024, Plaintiff met again with Officer Wysinger and Officer Malone of Internal Affairs to discuss her concerns about Captain Skelton's conduct.

40.

On or about March 8, 2024, Captain Skelton informed Plaintiff that she was being placed on a two-day suspension without pay for March 13 and 14, 2024, in response to the March 4, 2024 incident in which she had objected to his harassment.

11

41.

On March 22-23, 2024, Defendants initiated an investigation into allegations that Plaintiff had falsified her timesheet by claiming four hours of overtime worked on March 22, 2024.

42.

On March 28, 2024, after Officer Wysinger advised Plaintiff to document her concerns in writing, Plaintiff sent an email memo to Major Jones detailing her complaints about Captain Skelton creating a hostile work environment through his inappropriate staring and invasion of her personal space. Major Jones acknowledged receipt and stated he would investigate the matter.

43.

On March 28, 2024, approximately one hour after Plaintiff sent her written memo to Major Jones detailing Captain Skelton's harassment, Captain Skelton approached Plaintiff in the Communications Room and questioned her about the March 22, 2024 timesheet in front of coworkers.

44.

On or about April 2, 2024, Major Jones met with Plaintiff and asked what she wanted done about her complaint. Plaintiff requested that Captain Skelton not be allowed to enter the Communications Room when she was on shift due to the hostile

and uncomfortable environment. Major Jones denied this request, stating that Captain Skelton, as commander of communications, needed unrestricted access to the area. Major Jones stated he would speak with Captain Skelton about being cognizant of Plaintiff's personal space. Major Jones characterized Plaintiff's complaint as "too subjective and broad."

45.

On April 18, 2024, Plaintiff sent an email to Human Resources representatives Diane Lewis and Shalonda Brown requesting a meeting to discuss concerns within her department.

46.

On April 19, 2024, Plaintiff met in person with Diane Lewis and Shalonda Brown to formally report Captain Skelton's sexual harassment and her belief that she was being retaliated against for making complaints. Plaintiff detailed the pattern of harassment and explained that she felt unsafe reporting to management because Captain Skelton had indicated he was friends with the Chief.

47.

On May 13, 2024, after Plaintiff had been placed on administrative leave, she filed a formal grievance with the City alleging a hostile work environment and retaliation. Human Resources Deputy Director Diane Lewis conducted an

investigation but concluded that Plaintiff's allegations could not be substantiated because they were deemed "subjective and broad."

48.

Despite Plaintiff's multiple complaints through various channels—to supervisors, the Chief of Police, Internal Affairs, and Human Resources—Defendants failed to conduct a meaningful investigation into her allegations of sexual harassment or to take prompt and effective remedial action to stop Captain Skelton's harassing conduct.

49.

By opposing Captain Skelton's conduct, which she reasonably believed constituted unlawful sex discrimination and harassment, Plaintiff engaged in protected activity under Title VII and the Equal Protection Clause of the Fourteenth Amendment.

50.

Following Plaintiff's complaints, Defendants entered multiple disciplinary Guardian Tracking entries against Plaintiff, including entries for alleged insubordination related to headset usage dated March 4, 2024 and March 29, 2024, and an evaluation note for allegedly failing to complete mandatory training dated April 2, 2024.

14

51.

On April 15, 2024, Defendants placed Plaintiff on paid administrative leave pending the completion of the timesheet investigation.

52.

On May 14, 2024, Defendants terminated Plaintiff's employment, citing violations of the City's Standard of Conduct for alleged theft of time and untruthfulness.

53.

The stated reasons for Plaintiff's discipline and termination were pretextual. Captain Skelton, the subject of Plaintiff's harassment complaint, conducted and oversaw the investigation into Plaintiff, creating an inherent conflict of interest.

54.

Two female coworkers who were actually present in the Communications Room during the disputed hours on March 22, 2024—Shalimar Martinez and Kristie Tucker—were either never interviewed as part of the investigation or their interviews were not included in the investigative documents and report.

55.

The only witnesses interviewed were Kayla Bartlett and Tabitha Carver, neither of whom was present during the entire time period in question, and both of whom had personal relationships with Captain Skelton.

56.

Other employees had engaged in similar overtime arrangements without prior approval and without facing discipline or termination.

57.

The temporal proximity between Plaintiff's protected complaints in February and March 2024 and the adverse actions taken against her—including suspension, investigation, administrative leave, and termination—establishes a causal connection between Plaintiff's opposition to sex discrimination and the adverse employment actions.

58.

As a direct result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered loss of income, wages, and benefits since her termination on May 14, 2024.

59.

Defendants' stated reasons for terminating Plaintiff were a pretext for unlawful retaliation and discrimination based on her sex.

60.

Plaintiff has been unable to secure new employment in her field. On or about September 12, 2024, Plaintiff was denied an emergency dispatcher position with the Atlanta Police Department based on her termination record from Defendants. The rejection notice specifically stated: "Terminated from a Law Enforcement Agency."

61.

On July 30, 2024, the Georgia Peace Officer Standards and Training Council (POST) initiated an investigation into Plaintiff's certification as a result of her termination by Defendants, which continues to affect her ability to obtain employment in law enforcement communications.

62.

Plaintiff has suffered severe emotional distress, anxiety, and loss of her passion for her work as a result of Defendants' conduct. The hostile work environment and subsequent retaliation have caused Plaintiff daily stress and have required her to engage in "prep talks" with herself to cope with the trauma.

63.

Although Defendants purport to provide legitimate, non-discriminatory and non-retaliatory reasons for Plaintiff's discipline and termination, these reasons are pretextual.

64.

Plaintiff was treated less favorably than similarly situated employees who had engaged in comparable non-protected conduct but were not subjected to the same level of scrutiny or discipline.

65.

Plaintiff's suspension, placement on administrative leave, and termination were because of her sex in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment and/or were causally connected to her protected activity of opposing sex-based harassment in violation of Title VII.

## CLAIMS FOR RELIEF

### COUNT I: SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(Against City of Forest Park)

66.

Plaintiff re-alleges paragraphs 1-65 as if set forth fully herein.

18

67.

Plaintiff is female and her sex is a prohibited basis for Defendants to rely on in making adverse changes to the terms and conditions of her employment under Title VII.

68.

Plaintiff was subjected to pervasive unwelcome harassment by Captain Skelton based on her sex, including standing uncomfortably close to her, touching her shoulders without consent, placing his lips near her ear so she could feel his breath, staring at her, and making moaning noises while watching her work.

69.

Plaintiff repeatedly objected to Captain Skelton's conduct and made clear that it was unwelcome.

70.

The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive and hostile working environment that a reasonable person would find hostile or abusive.

71.

The harassment is attributable to Defendant City because Captain Skelton was Plaintiff's supervisor with authority over her employment and was instrumental in

19

taking adverse employment actions against Plaintiff, creating vicarious liability under Title VII and precluding any affirmative defense based on "good faith" policies.

72.

Defendants failed to take prompt and effective remedial action reasonably calculated to end the harassment despite Plaintiff's multiple complaints through various channels.

73.

Accordingly, Defendants violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended.

74.

Plaintiff is entitled to compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(1).

75.

As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered economic and non-pecuniary damages.

76.

Defendant City is therefore liable for all damages proximately caused by their sex discrimination against Plaintiff.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

77.

Plaintiff re-alleges paragraphs 1-76 as if set forth fully herein, as each of these facts are either jurisdictional or background facts, identification of the persons involved, identify specific retaliatory acts and/or identify the conduct which gave rise to Plaintiff's objectively reasonable good faith belief that she had been subjected to discrimination under Title VII.

78.

Plaintiff engaged in activity protected under Title VII by opposing Captain Skelton's sex-based harassment through complaints to supervisors, the Chief of Police, Internal Affairs, and Human Resources.

79.

Defendants subjected Plaintiff to adverse employment actions, including suspension, placement on administrative leave, and termination of her employment.

80.

There is a causal connection between Plaintiff's protected activity and the adverse employment actions, as evidenced by the temporal proximity between her complaints and the adverse actions, including the fact that Captain Skelton's

21

conducted the investigation of Plaintiff after she complained about him, and his retaliatory statements made to Plaintiff.

81.

Defendants' stated reasons for the adverse employment actions are pretextual, as the investigation was conducted by the subject of Plaintiff's harassment complaint, witnesses who could corroborate Plaintiff's account were not interviewed, and similarly situated employees were not subjected to the same scrutiny or discipline.

82.

Accordingly, Defendants violated Plaintiff's rights under Title VII by retaliating against her for opposing unlawful sex discrimination.

83.

Plaintiff is entitled to compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(a)(1).

84.

As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered economic and non-pecuniary damages, including loss of wages and benefits, damage to her professional reputation, and severe emotional distress.'

85.

Defendants willfully and wantonly disregarded Plaintiff's rights, and their actions were undertaken in bad faith.

86.

Defendants are liable for all damages proximately resulting from their retaliation against Plaintiff.

## COUNT III: VIOLATION OF 42 U.S.C. § 1983 - EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

87.

Plaintiff re-alleges and incorporates paragraphs 1 through 86 as if fully set forth herein.

88.

At all times relevant to this action, Defendants City of Forest Park, Georgia; Forest Park Police Department; Captain Willis Skelton; and Chief Brandon Criss acted under color of state law as employees and agents of a municipal entity.

89.

Plaintiff has a clearly established constitutional right under the Equal Protection Clause of the Fourteenth Amendment to be free from sex-based discrimination and retaliation in the terms and conditions of her employment.

90.

Defendants violated Plaintiff's clearly established constitutional rights by: a) Subjecting Plaintiff to a sexually hostile work environment based on her sex through Captain Skelton's repeated unwelcome conduct, including touching, invasion of personal space, staring, and making sexual noises; b) Retaliating against Plaintiff for opposing such sex-based discrimination by suspending her employment, placing her on administrative leave, and ultimately terminating her employment; and c) Treating Plaintiff differently based on her sex and for opposing sex discrimination, thereby denying her equal protection of the laws.

91.

Defendant Captain Willis Skelton, acting in his individual capacity, acted with deliberate indifference to, or reckless disregard for, Plaintiff's constitutional rights by engaging in the sexual harassment described herein and by conducting and overseeing the investigation into Plaintiff's alleged timesheet violations after she complained about his harassment, creating an inherent conflict of interest and retaliatory motive.

92.

Defendant Chief Brandon Criss, acting in his individual capacity, acted with deliberate indifference to, or reckless disregard for, Plaintiff's constitutional rights

24

by: a) Failing to properly investigate Plaintiff's complaints of sexual harassment; b) Allowing Captain Skelton to investigate Plaintiff after she complained about him; c) Approving the termination of Plaintiff's employment based on a pretextual investigation; and d) Failing to take prompt and effective remedial action to stop the harassment and prevent retaliation.

93.

Defendants City of Forest Park and Forest Park Police Department had policies, practices, or customs that were the moving force behind the constitutional violations suffered by Plaintiff, including: a) A policy or custom of failing to properly investigate complaints of sexual harassment; b) A policy or custom of allowing supervisors who are the subjects of harassment complaints to conduct investigations of the complainants; c) A policy or custom of failing to discipline supervisors who engage in sexual harassment; d) A policy or custom of allowing harassment to continue after complaints are made; e) A policy or custom of retaliating against employees who report sexual harassment; and f) Deliberate indifference to the constitutional rights of employees through failure to adequately train, supervise, and discipline personnel regarding sexual harassment and retaliation.

94.

The municipal Defendants' policies, practices, and customs were implemented by final policymakers with authority over employment decisions, including Chief Brandon Criss.

95.

These unconstitutional policies, practices, and customs were the moving force behind Plaintiff's injuries and were a direct and proximate cause of the constitutional violations she suffered.

96.

The municipal Defendants' deliberate indifference to Plaintiff's constitutional rights is evidenced by their response to Plaintiff's multiple complaints through various channels, including to supervisors, the Chief of Police, Internal Affairs, and Human Resources, none of which resulted in meaningful investigation or effective remedial action.

97.

As a direct and proximate result of Defendants' violations of her constitutional rights under 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has suffered: a) Loss of wages, benefits, and employment opportunities; b) Damage to her professional reputation and ability to obtain future

employment; c) Severe emotional distress, anxiety, and mental anguish; and d) Other economic and non-economic damages.

98.

Accordingly, Defendants violated 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment.

99.

Plaintiff is entitled to compensatory damages from all Defendants for the injuries she sustained as a result of these constitutional violations.

100.

Plaintiff is entitled to punitive damages from Defendants Captain Willis Skelton and Chief Brandon Criss, in their individual capacities, based on their malicious, willful, wanton, and reckless disregard for Plaintiff's constitutional rights.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Lindsey Barrett prays for judgment as follows:

(a) A trial by jury as to all triable issues;

(b) Back pay, front pay, and compensatory damages for lost wages and benefits from May 14, 2024, through the date of judgment;

27

(c) General damages for mental and emotional suffering caused by Defendants' discriminatory and retaliatory conduct;

(d) Punitive damages against the individual Defendants based on their willful, malicious, and deliberate acts of sex discriminat6ion in violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment;

(e) Declaratory relief establishing that Defendants violated Plaintiff's statutory and constitutional rights under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment;

(f) Injunctive relief, including expungement of disciplinary records from Plaintiff's personnel file, reinstatement to her former position or front pay in lieu thereof, an Order to the Georgia Peace Officer Standards and Training Council giving notice of such action, and implementation of policies and procedures reasonably calculated to prevent future violations of Title VII and the Fourteenth Amendment;

(g) Reasonable attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

(h) Prejudgment and post-judgment interest at the maximum rate allowed by law;

28

(i) All costs of this action; and

(j) Such other and further relief as this Court deems just and proper.

Respectfully submitted this 20th day of February, 2026.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*

Matthew C. Billips
Georgia Bar No. 057110

*Counsel for Plaintiff Lindsey Barrett*

2921 Piedmont Road, NE
Atlanta, GA 30305
(404) 214-0120
matt@justiceatwork.com